UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TONY A. IRVINE, | Case No. 4:22-cv-00218-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| DUSTIN COOK, the CITY OF IDAHO FALLS, and JOHN DOES I - X, | |
| Defendant. | |

## INTRODUCTION

Before the Court are Plaintiff Tony A. Irvine's Motion for Partial Summary Judgment (Dkt. 7), and Defendants' Motion to Deny Plaintiff's Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56(d) (Dkt. 9). The Court heard oral argument on December 12, 2022, and the motions are ripe for disposition. For the reasons set forth below, the Court will grant Irvine's motion for partial summary judgment against Defendant Dustin Cook and deny Defendants' Rule 56(d) request for additional discovery.

## BACKGROUND

1. **Factual Background**

On July 14, 2020, Defendant Idaho Falls Police Officer Dustin Cook received a call from dispatch advising him of a "disturbance between two males in the north end of

the Walmart parking lot near the Longhorn Steak House in Idaho Falls." *Case Report*, Ex. 1 to Wood Decl., Dkt. 7.3 at 5; *Cook Decl.* ¶ 2, Dkt. 13-1. Dispatch conveyed that the disturbance was "physical" and that "a bat was involved." *Cook Decl.* ¶ 4, Dkt. 13-1. When Officer Cook arrived at the scene in his police vehicle, he observed "one male with a bat in his hands with it cocked over his shoulder, and "the other male in question standing about 10 yards away from [the man with the bat] yelling." *Case Report*, Ex. 1 to Wood Decl., Dkt. 7.3 at 5. "There was another male sitting on the ground near the male with the bat." *Id.* As Cook exited his patrol car, he ordered the man with the bat to put it down, and he did. *Case Report*, Ex. 1 to Wood Decl., Dkt. 7.3 at 4; *Cook Decl.* ¶ 8, Dkt. 13-1.

Office Cook then "ordered the man who was yelling to stay where he was so that [he] could investigate the disturbance." *Cook Decl.* ¶ 9, Dkt. 13-1. The man did not respond to the command and "started to ride away." *Case Report*, Dkt. 7.3 at 4; *Cook Decl.* ¶ 9, Dkt. 13-1. Officer Cook "then ran after [the man] telling him to stop," but the man continued to ride away on his bicycle. *Case Report*, Dkt. 7.3 at 4; *Cook Decl.* ¶ 10, Dkt. 13-1. Cook then "prevented him from leaving by pushing him from his bicycle." *Cook Decl.* ¶ 10, Dkt. 13-1; *Case Report*, Dkt. 7.3 at 4.

After pushing the man off his bicycle, Officer Cook left him with another officer and went to speak with the man who had been holding the bat. This man told Cook that he hit the other man with the bat on the arm because the man had been yelling at him, and he felt threatened. *Case Report*, Dkt. 7.3 at 5. Two witnesses backed up story of the man

with the bat, telling Officer Cook that the man with the bat "had acted in self-defense after the man who had been yelling confronted them." *Cook Decl.* ¶ 12, Dkt. 13-1.

After speaking with the man with the bat, Officer Cook spoke to the man who had attempted to ride away on his bike and who was now being detained by the other officer. This man was the plaintiff, Tony Irvine. Irvine told Cook that he did not know he was there or why the man had pulled a bat on him. *Id.* ¶¶ 13, 15. Irvine admitted he had a verbal altercation with the other man, and then the man pulled a bat on him. *Id.* ¶ 16. Irvine informed Cook that the other man had hit him on the wrist with the bat. *Id.* ¶ 17.

Another witness recounted that the man with the bat had retrieved it from his vehicle and "started talking like he was an army tough guy and put up with no shit." *First Witness Statement*, Dkt. 7.3 at 10. The witness said the man with the bat had previously thrown Irvine's bike out of the way, which is what provoked the verbal altercation. *Id.* When the man pulled out the bat, this witness reported that Irvine laughed and made a snide comment. *Id.* The man swung the bat at Irvine, who put up his arm to block it. *Id.* Irvine became upset and started yelling, according to this witness, and the man "was twirling the bat like was going to hit [Irvine] again." *Id.* Irvine then said he was "out of [there]" and started pushing his bike toward Tobacco Connection. *Id.* There is no indication that Cook spoke to this witness at the time of the altercation, but it is

undisputed that Irvine was 10 yards from the man with the bat at the time Cook arrived at the parking lot.[1]

Another witness who was at the Walmart parking lot at the time of the altercation submitted a statement asserting that he saw Irvine "riding across the parking lot and a police officer came running up behind him and tackled him off his bike." *Second Witness Statement*, Dkt. 7.3 at 13. This witness says that Irvine "was just sitting down riding slow by Tobacco Connection." *Id.* "There were no sirens or yelling." *Id.* "Looked like Tony didn't even know they were there." *Id.* "Ran up behind him and tackled him….like he was America's Most Wanted fugitive." *Id.* "The officer got up[,] but Tony didn't. He just laid there rolling around in the fetal position." *Id.* According to this witness, Irvine did not get up until the paramedics came and helped him up, and then Irvine just left eventually, pushing his bike. *Id.*

Officer Cook did not issue any citations to either Irvine or the other man for disturbing the peace for fighting, and Irvine was never charged because of the incident. *Case Report*, Dkt. 7.3 at 6. Irvine declined medical attention and left. *Id.* Irvine maintains he suffered a collapsed lung and significantly displaced rib fractures spanning

---

[1] Cook argues that this witness's statement is not based on personal knowledge and should be stricken because this witness did not witness the encounter between Irvine and Cook. But the Court simply recites the witness's statement for background and not to prove anything related to encounter between Irvine and Cook. Indeed, construing all facts and inferences in Cook's favor, the Court only considered Cook's declaration and the case report he drafted following the incident in deciding Irvine's motion for summary judgment.

eight ribs, "which required complicated surgery involving open reduction and internal fixation of various ribs."

## 2.    Procedural Background

On May 28, 2022, Irvine filed his Complaint against Defendants Dustin Cook and the City of Idaho Falls, alleging federal claims under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizures and use of excessive force. On August 18, 2022, Defendants filed their Answer, and on that same day, Plaintiff Tony Irvine moved for partial summary judgment, seeking summary judgment on his Fourth Amendment claims against Officer Cook in his individual capacity for unreasonable search and seizure and excessive force. In response, Defendants have moved to deny Irvine's motion for partial summary judgment pursuant to Rule 56(d).

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case."  *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings.  *Id.* at 255.  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255.  If a claim requires clear and convincing evidence, the question on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim.  *Id*.

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed.R.Civ.P. 56(e). In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

## ANALYSIS

### 1.  Irvine's Motion for Partial Summary Judgment

Section 1983 provides a remedy for violations of rights secured by the Constitution by persons acting under the color of state law. 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

### A.  Fourth Amendment – Unlawful Seizure

The Fourth Amendment protects the right to be free from unreasonable searches or seizures. A seizure triggering the protection of the Fourth Amendment "occurs when a law enforcement officer, by means of physical force or show of authority, in some way restrains the liberty of a citizen." *United States v. Chan–Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997); *see also Florida v. Bostick*, 501 U.S. 429, 434 (1991). "Traditionally, all Fourth Amendment 'seizures' constituted 'arrests' and therefore required probable cause. *United States v. Guzman-Padilla*, 573 F.3d 865, 876 (9th Cir. 2009) (citing *Dunaway v. New York*, 442 U.S. 200, 208–09 (1979)). "Departing from the traditional rule, the Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968), recognized an exception to the probable cause requirement for police encounters that were much less severe in their intrusiveness than traditional 'arrests,' holding that reasonable suspicion would suffice." *Id.* (quoting *Dunaway*, 442 U.S. at 209) (internal quotation marks, ellipses, and brackets omitted).

Here, the Court has no trouble concluding that Officer Cook seized Irvine when he ran after him and pushed him off his bike onto the ground. By using physical force, Cook restricted Irvine's liberty in such a matter that made it clear that Irvine was not free to leave. In fact, by Cook's own admission, he pushed Irvine off his bike to prevent him from leaving. Therefore, at a minimum, reasonable suspicion was required to detain Irvine. A finding that Irvine was seized does not end the inquiry, however: the question remains whether his seizure was unreasonable. *See United States v. Washington*, 387 F.3d 1060, 1069 (9th Cir. 2004).

### (1) Nature of the Seizure

Determining the constitutionality of Irvine's seizure turns, first, on the question of whether Cook's forcibly pushing Irvine off his bike to prevent him from leaving constituted a *Terry* stop or an arrest. *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). "Whether a Terry stop escalated to an arrest cannot be determined by reference to a 'mechanical checklist,' but must instead be judged according to the totality of the circumstances." *Jackson v. Johnson*, 797 F. Supp. 2d 1057, 1064 (D. Mont. 2011) (citing *United States v. Parr*, 843 F.2d 1228, 1231 (9th Cir. 1988) and *Gallegos v. City of Los Angeles*, 308 F.3d 987, 991 (9th Cir. 2002)) (internal quotation marks omitted). "In assessing the totality of the circumstances, a court must consider both the intrusiveness of the stop, i.e., the aggressiveness of the police methods and how much the plaintiff's liberty was restricted, and the justification for the use of such tactics, i.e., whether the

officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken." *Id.* (quoting *Lambert*, 98 F.3d at 1185 (internal quotation marks omitted).

In short, in deciding whether the police action constitutes a *Terry* stop or an arrest, courts must consider "not only how intrusive the stop was, but also whether the methods used were reasonable *given the specific circumstances*." *Lambert*, 98 F.3d at 1185 (emphasis in original). As a result, in some circumstances, e.g., when a suspect is cooperative, certain police action may constitute an arrest while these "*same* actions" in other circumstances "may *not* constitute an arrest," such as when "the suspect is uncooperative, or the police have specific reasons to believe that a serious threat to the safety of the officers exists." *Id.* (emphasis in original). "The relevant inquiry is always one of reasonableness under the circumstances." *Id.* (citations omitted).

In a typical *Terry* stop for which an officer has no reason to suspect danger, it is a Fourth Amendment violation for the officer to employ aggressive tactics such as drawing a weapon, forcing a subject to lie prone on the ground, and using handcuffs." *Jackson*, 797 F. Supp. 2d at 1064 (citing *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990)). "The police may not employ such tactics every time they have an 'articulable basis' for thinking that someone may be a suspect in a crime." *Lambert*, 98 F.3d at 1187 (emphasis in original). Rather, the Ninth Circuit only permits the use of intrusive means to effect a stop in special circumstances, such as when "the police have information that the suspect is currently armed or the stop closely follows a violent crime." *United States v. Miles*, 247 F.3d 1009, 1013 (9th Cir. 2001).

For example, in *Allen v. City of Los Angeles*, 66 F.3d 1052 (9th Cir. 1995), the Ninth Circuit held that no arrest occurred despite the police's drawing their weapons, handcuffing Allen, and ordering him to lie down on his stomach, where the suspects had led the police on a protracted high-speed car chase and refused to pull over. *Id.* at 1057. When they did finally pull over, one suspect was "non-compliant and combative," Allen was drunk, and the stop occurred in a high-crime area, at night. *Id.* The officer also had reason to suspect that the car might be stolen. *Id.* Given these circumstances, the Ninth Circuit concluded that the officers had sufficient reason to believe that Allen might be dangerous or that safety considerations required such intrusive methods of restraint. *Id.*

In *United States v. Greene*, 783 F.2d 1364, 1366 (9th Cir. 1986), the Ninth Circuit similarly held that no arrest occurred despite the officers' drawing their weapons, where the officers had a credible report from an informant that the suspect possessed a pistol, as well as "wads of red-stained money." *Id*. at 1366-1368. The Ninth Circuit concluded that "[t]hese circumstances justified the officers' actions in drawing their weapons and ordering both men out of the car." *Id*. at 1368.

Other Ninth Circuit cases further illustrate the type of conditions under which aggressive police actions during a *Terry* stop are warranted, and therefore do not constitute an arrest. *See, e.g., Miles*, 247 F.3d at 1012–13 (approaching suspect with guns drawn, forcing him to kneel and handcuffing him before conducting any investigation did not constitute an arrest where officers had a report of an armed suspect and were outnumbered three to two in the immediate vicinity); *United States v. Alvarez*, 899 F.2d

833, 836–839 (9th Cir.1990) (no arrest where police approached with weapons drawn after receiving credible tip that subject possessed explosives); *United States v. Taylor*, 716 F.2d 701, 708–09 (9th Cir. 1983) (no arrest when police handcuffed companion of suspected drug dealer at gunpoint where police had strong evidence of drug activity and received briefing that dealer and his companions should be considered dangerous); and *United States v. Bautista*, 684 F.2d 1286, 1287–90 (9th Cir.1982) (handcuffing of two subjects justified, and not an arrest, where police suspected subjects of armed robbery and knew that a third suspect might still be in the vicinity).

By contrast, the Ninth Circuit have found aggressive actions during a stop may constitute an arrest when the officers have no reason to suspect danger or where the suspected offense is minor or non-violent. In *Del Vizo*, for example, officers stopped the driver of a van after surveillance indicated that the driver had just completed a drug transaction. Police approached with weapons drawn, ordered the driver out of the van, forced him to lie down on the street, and handcuffed him. *Del Vizo*, 918 F.2d at 823. The officers had no evidence that the driver could be dangerous when they took these actions. The Ninth Circuit held that the police conduct constituted an arrest under the circumstances, and therefore required a showing of probable cause. *Id.* at 824. *See also United States v. Ricardo D.*, 912 F.2d 337 (9th Cir. 1990) (holding arrest had occurred where officers took non-threatening juvenile subject by the arm, told him not to run, and placed him in a patrol car for questioning).

In this case, when Officer Cook arrived on the scene to respond to a "disturbance," he saw two men ten yards (or thirty feet) apart – with one yelling, Irvine, and one with a bat. After telling the man with the bat to put it down, Cook turned to Irvine and ordered him "to stay where he was so that [Cook] could investigate the disturbance," which Irvine did not heed. *Cook Decl.* ¶ 9. Dkt. 13-1. Cook "then ran after him again telling him to stop again," but Irvine continued to ride away on his bike. *Case Report*, Dkt. 7.3 at 4; *see also Cook Decl.* ¶¶ 9-10. Cook then proceeded to run after Irvine and "prevented him from leaving by pushing him from his bicycle," *id.* ¶ 10 – or in the words of one witness, Cook ran up behind Irvine "and tackled him…." *Second Witness Statement*, Ex. 2 to Wood Decl., Dkt. 7.3 at 13.

In light of these cases, when Cook ran after Irvine and forcibly pushed him off his bike to the ground, this was an arrest. *See Jackson*, 797 F. Supp. 2d at 1066 (*Terry* stop ripened into an arrest when the officer pulled a taser on suspect who refused to drop to his knees); *see also United States v. Jarvis*, No. 18 CR. 475 (PAC), 2019 WL 1932758, at *4 (S.D.N.Y. Apr. 30, 2019) (finding arrest occurred when the officer grabbed the suspect "by the hair and tackled him from behind in the street" to prevent him from fleeing). Although Cook did not draw his weapon or use handcuffs, his actions were aggressive and intrusive – whether characterized as "pushing" to the ground or "tackling" to the ground; it is undisputed that Cook used physical force to detain Irvine.

While "the use of some force does not automatically transform an investigatory detention into an arrest, any overt show of force or authority should be justified under the

circumstances." *Ricardo D.*, 912 F.2d at 340. But Irvine presented no legitimate safety concerns to Cook when Cook ran after him and shoved him off his bike: Cook had no information Irvine was armed; the only "weapon" reported was a bat, which Irvine plainly did not have in his possession. The stop did not closely follow a violent crime, but rather a report of possible "disturbing the peace by fighting" – a misdemeanor. And Cook had no reason to believe that a crime involving violence was about to occur; by his own admission, Irvine was thirty feet away from the man with the bat when he arrived, and thus the reasonable conclusion was that Irvine had already started to extricate himself from the "disturbance" when Cook arrived on the scene to investigate, and any alleged misdemeanor was complete.

In summary, even after construing the evidence in a light most favorable to Officer Cook, it is clear that Cook's detention of Irvine was an arrest, which required probable cause.

### (2) Probable Cause

"Under the Fourth Amendment, a warrantless arrest requires probable cause," which "exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Whether probable cause exists depends "on the totality of facts" available to the officers, who "may not disregard facts tending to dissipate probable cause." *Id.* at 1073 (internal quotation marks omitted).

Here, Officer Cook did not have probable cause to arrest Irvine – and Cook does not argue otherwise. This is enough to end the inquiry. Cook nonetheless argues that he had reasonable suspicion "to detain" Irvine based on the fact that he observed him yelling in the parking lot, and Irvine "attempted to leave the scene." *Defs' Resp.*, p. 13, Dkt. 5.

Even if true only reasonable suspicion was required to detain Irvine, neither of Cook's cited reasons justified his running after Irvine and pushing him off his bicycle to prevent him from leaving. Yelling at someone thirty feet away in a parking lot is not a crime. *C.f. Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1175 (9th Cir. 2013). And Irvine's yelling, particularly as Irvine appeared to already be leaving, did not provide Officer Cook a reasonable, articulable suspicion to believe that criminal activity was afoot. If anything, given the other guy had the bat, and Irvine had no weapon, Cook had more reason to believe that Irvine was the victim of a crime, not the perpetrator.

The only other justification Cook has provided for detaining Irvine was that Irvine did not heed Cook's command for him to stop. Cook testified in his declaration that he immediately ordered Irvine to stop upon arriving on the scene and seeing him yelling, so that he could "investigate the disturbance." But absent reasonable suspicion to detain Irvine in the first place, Irvine "had no obligation to cooperate and no obligation to stay put." *United States v. Williams*, 11 F. App'x 842, 844 (9th Cir. 2001) (citing *Bostick*, 501 U.S. at 437; *see also Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). And Irvine's "mere refusal to do so did not give rise to reasonable suspicion." *Id.* (citing *Bostick*, 501 U.S. at 437). "People do not have to voluntarily give up their privacy or freedom of movement,

on pain of justifying forcible deprivation of those same liberties if they refuse." *United States v. Fuentes*, 105 F.3d 487, 490 (9th Cir. 1997).

Indeed, as the Second Circuit has explained, if "a simple refusal to comply could create reasonable suspicion where none existed before, we would create a truly paradoxical class of individuals: individuals who cannot be stopped by officers, but who can be stopped if they refuse to stop." *United States v. Freeman*, 735 F.3d 92, 102 (2d Cir. 2013). "Such a conclusion would gut the Court's repeated determination that an individual approached by the police 'need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained e*ven momentarily* without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds.'" *Id.* at 102–03 (2d Cir. 2013) (quoting *Florida v. Royer*, 460 U.S. 491, 497–98 (1983) (plurality opinion) (emphasis added in *Freeman*). "The 'more' contemplated by *Royer*, sufficient to give rise to reasonable suspicion, does not exist in this case." *Id.*

That Cook stopped Irvine to "investigate" a *completed* misdemeanor further underscores Cook's lack of justification for forcibly pushing Irvine off his bicycle to prevent him from leaving. *Cook Decl.* ¶ 9, Dkt. 13-1. It is one thing to uphold a stop on suspicion of a misdemeanor, not committed in the officer's presence, when there is a potential for repeated danger or risk of escalating violence. It is quite another to uphold a stop for a completed misdemeanors when there is no indication that it will be repeated, or cause danger to others. *United States v. Grigg*, 498 F.3d 1070, 1075 (9th Cir. 2007) ("The

absence of any danger to any person arising from the misdemeanor noise violation here does not support detaining the suspect as promptly as possible."). For precisely this reason, the Ninth Circuit holds that "[t]he Fourth Amendment constrains officers who conduct stops to investigate completed misdemeanors" absent any exigency of danger or risk of escalation. *Johnson v. Bay Area Rapid Transit Dist*., 724 F.3d 1159, 1175 (9th Cir. 2013).

Here, as discussed, the situation Cook confronted when he ran after Irvine and pushed him off his bike presented little, if any, risk for "ongoing or repeated danger" or escalating violence. At the time he seized Irvine, Cook had no reason to believe that Irvine had a weapon or otherwise presented any past or ongoing threat to public safety. In fact, ironically, it was Cook himself who escalated the situation by running after Irvine and shoving him off his bike. Given the lack of exigency to seize Irvine, even temporarily, "his interest in personal security against governmental intrusion is entitled to more deference." *Grigg*, 498 F.3d at 1081. Nothing about the situation – investigation of a completed misdemeanor for disturbing the peace, particularly when the available facts indicated that Irvine was the possible victim, not the perpetrator, of a crime – warranted Cook's aggressive actions toward Irvine. Cook's seizure of Irvine was therefore unlawful as it was "more intrusive than necessary." *Ganwich v. Knapp*, 319 F.3d 1115, 1122 (9th Cir. 2003) (quoting *Florida v. Royer*, 460 U.S. 491, 500, 504 (1983); *See also Sialoi v. City of San Diego*, 823 F.3d 1223, 1232 (9th Cir. 2016).

**B. Fourth Amendment – Excessive Force**

An officer will not be found to have used excessive force so long as his actions are objectively reasonable in light of the facts and circumstances confronting him. *Graham v. Connor*, 490 U.S. 386, 395–97 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)); *see also Bryan v. MacPherson*, 630 F.3d 805, 824 (9th Cir. 2010). Assessing "the nature and quality" of a given "intrusion" requires an evaluation of the "type and amount of force inflicted." *Bryan,* 630 F.3d at 826. Here, Officer Cook ran up behind Irvine and forcibly pushed him off his bike

The Court must balance that intrusion against the countervailing governmental interests at stake. Three core factors are used to assess the government's interest in the use of force: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Bryan*, 630 F.3d at 826 (quoting *Graham*, 490 U.S. at 396) (internal quotation marks omitted); *see also LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000). "Among these considerations, the most important is the second factor—whether the suspect posed an immediate threat to others." *Seidner v. DeVries*, 39 F.4th 591, 599 (9th Cir. 2022) (citations omitted). Other factors courts may consider include whether the officer warned the subject before using force, and whether

the officer considered less intrusive means to effect arrest. *Bryan*, 630 F.3d at 831. Critically, when "there is no need for force, any force used is constitutionally unreasonable." *Lolli v. County of Orange*, 351 F.3d 410, 417 (9th Cir. 2003) (emphasis added) (citation omitted). *See also Green v. City & Cty of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2018) ("Where [government] interests do not support a need for force, 'any force used is constitutionally unreasonable.'") (quoting *Lolli*, 351 F.3d at 417).

Here, balancing the nature and quality of the intrusion – Officer Cook's forcibly pushing Irvine off his moving bike to the ground – against the countervailing government interest at stake leads to the conclusion that Officer Cook used excessive force. First, it is undisputed that the suspected crime was minor – a *completed* misdemeanor. Second, it is undisputed that Irvine, who had no weapon and who was riding his bike away from any suspected altercation, posed no immediate threat to Office Cook or others. Third, Irvine was not resisting arrest or attempting to evade arrest by flight – as discussed, Officer Cook did not have probable cause to effect an arrest or even reasonable suspicion to detain Irvine, and therefore Irvine had no obligation to cooperate or stay put when Cook ordered him to stop. These factors make clear that no force was necessary or justified here, making the use of any force constitutionally unreasonable as a matter of law.

### C.  *Qualified Immunity*

The doctrine of qualified immunity shields individual officers from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 244 (2009).

"When police officers are sued for their conduct in the line of duty, courts must balance two competing needs: 'the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1168 (9th Cir. 2013) (quoting *Pearson*, 555 U.S. at 244). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 244 (internal quotation marks and citation omitted).

The Supreme Court has outlined a two-step qualified immunity analysis: (1) whether the undisputed facts establish a violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged conduct. *Id.* Qualified immunity applies "unless the officials conduct violated a clearly established constitutional right." *Id.* Having concluded that Officer Cook's actions violated Irvine's Fourth Amendment rights, the remaining question the Court must answer is whether his conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.*

A constitutional right is "clearly established" if "every reasonable official would have understood that what he is doing violates that right" at the time of their conduct. *Taylor v. Barkes*, 575 U.S. 822, (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "This requires two separate determinations: (1) whether the law governing the conduct at issue was clearly established and (2) whether the facts as

alleged could support a reasonable belief that the conduct in question conformed to the established law." *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1052 (9th Cir. 2014). "Both are questions of law to be determined by the court in the absence of genuine issues of material fact." *Id.*

In July 2020, it was clearly established that forcibly pushing a criminal suspect to the ground constitutes a "seizure," requiring reasonable suspicion at a bare minimum. *See California v. Hodari D.*, 499 U.S. 621, 629 (1991) (concluding that a young man running from police was not seized until he was tackled); *Brendlin v. California*, 551 U.S. 249, 262 (2007); ("a fleeing man is not seized until he is physically overpowered"); *U.S. v. McClendon*, 713 F.3d 1211, 1214  (9th Cir. 2013) (holding that a defendant who walks away from and refuses to comply with the commands of officers who are attempting to arrest him is seized when the officers tackled him). Likewise, the law was clearly established officers may not use nontrivial force, like the force used here, to investigate a completed *misdemeanor* "unless the circumstances reasonably justify such extraordinary procedures in order to ensure the officers' safety." *Washington*, 98 F.3d at 1192 ("At the time of Washington and Hicks' detentions the law was clearly established that, when making a *Terry* stop, officers may not use highly intrusive measures such as the ones used here, unless the circumstances reasonably justify such extraordinary procedures in order to ensure the officers' safety."); *see also Grigg*, 498 F.3d 1at 1081 (quoting *Hensley*, 469 U.S. at 229)*.* This is particularly true when the basis for reasonable suspicion is tenuous, at best.

The second question is whether, given the meager information Cook had about Irvine, and the tenuous nature of the "articulable suspicion," a reasonable officer could have believed it was reasonable to chase after Irvine and forcibly push him off his bike to investigate a completed misdemeanor. *Washington,* 98 F.3d at 1192. Cook's apparent reasons for taking such an intrusive action were wholly unsubstantial. *Id.* As noted, yelling thirty feet away is not a crime, and a person's refusal to heed an officer's request to stop do not give rise to reasonable suspicion if it did not exist in the first place.

All of these cases gave Officer Cook more than sufficient notice that he could not chase after Irvine and shove him off his bicycle to investigate a suspected disturbing the peace violation. Even after construing the facts in a light most favorable to the Defendants, Officer Cook did not have probable cause to arrest Irvine, and he did not have a reasonable basis to conclude Irvine was armed or dangerous, or that a risk for "ongoing or repeated danger" or "escalation" existed. A reasonable officer in these circumstances would have known that it was unreasonable to use nontrivial force to detain Irvine. In fact, a reasonable officer in these circumstances would have known that it was unreasonable to use *any* force to detain Irvine. Cook is therefore not entitled to qualified immunity on Irvine's false arrest or excessive force claim.

Cook's only response is that he possesses insufficient information to permit him to raise the defense of qualified immunity. As already noted, however, the question of qualified immunity is a question of law to be determined by the court in the absence of genuine issues of material fact, *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039,

1052 (9th Cir. 2014), and, in fact, is often decided on a motion to dismiss. Here, even construing all the facts in Cook's favor, he fails to point to any genuine issue of material fact that would change the outcome.

Accordingly, the Court will grant Irvine's motion for partial summary judgment, finding that Cook violated Irvine's clearly established Fourth Amendment rights to be free from false arrest and excessive force, and Cook is not entitled to qualified immunity for unlawfully seizing Irvine and his use of excessive force. The issue of damages remains unresolved, as do any claims against the City of Idaho Falls.

## 2.    Defendants' Rule 56(d) Motion

The Court will deny Cook's Rule 56(d) motion to deny or defer ruling on Irvine's motion for partial summary judgment. Cook argues that Irvine's motion for partial summary judgment is premature because he has not had the benefit of discovery. "To prevail on a request for additional discovery under Rule 56(d), a party must show that (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Midbrook Flowerbulbs Holland B.V.*, 874 F.3d at 619–20.

But Cook has failed to show that any "sought-after facts are essential to oppose summary judgment" with respect to Irvine's claims. As explained above, even construing all disputed facts in Cook's favor, the Court finds Cook violated Irvine's Fourth Amendment right to be free from unlawful seizures and excessive force. Cook maintains he needs to depose Irvine but points to no facts that he could learn from Irvine's

**MEMORANDUM DECISION AND ORDER - 23**

deposition that would preclude summary judgment. The Court will therefore deny Cook's Rule 56(d) motion.

### ORDER

**IT IS ORDERED:**

1.     Plaintiff's Motion for Partial Summary Judgment (Dkt. 7) is **GRANTED** as set forth above.

2.     Defendants' Motion to Deny Plaintiff's Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56(d) (Dkt. 9) is **DENIED**.

DATED: January 30, 2023

B. Lynn Winmill
U.S. District Court Judge