UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TONY A. IRVINE,<br><br>             Plaintiff,<br><br>    v.<br><br>DUSTIN COOK; the CITY OF IDAHO FALLS; and JOHN DOES I - X,<br><br>             Defendants. | Case No. 4:22-cv-00218-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Plaintiff's Motion in Limine to Exclude Opinions of Lynn Stromberg, M.D. (Dkt. 39). The Court finds oral argument would not significantly aid its decision-making process and decides the motions on the parties' submissions. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). The Court grants in part and denies in part the motion.

## I. BACKGROUND

### A.    Factual Background

On July 14, 2020, Irvine had an altercation with a man named Christopher Schmidt, who Irvine says swung a bat at his head. Irvine maintains he blocked the blow with his left hand and sustained abrasions on his left hand. This altercation led someone to call the police, and Defendant Officer Dustin Cook of the Idaho Falls Police Department responded to dispatch's call advising of a "disturbance" between two males in the Walmart parking lot on Utah Avenue in Idaho Falls.

**MEMORANDUM DECISION AND ORDER - 1**

When Cook arrived, he observed a man holding a bat and another man standing 30 feet away, yelling. The man who was yelling was later identified as Irvine. Irvine testified he got on his bicycle and left because he "didn't want to fight that guy that had the baseball bat." (Dkt. 39-2 at p. 31, Irvine Dep. 29:8-11). Cook says he ordered Irvine to stop, but Irvine did not stop. Cook then chased after Irvine and pushed him off his bicycle to "prevent him from leaving." Irvine says that he was just riding away and that suddenly Cook "tackled" him off his bicycle, causing Irvine to fall and land on his right side. As a result, Irvine maintains he suffered eight badly fractured ribs and a collapsed lung.

**B.     Procedural Background**

Irvine filed his complaint against Cook and the City of Idaho Falls, alleging claims under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure and from the use of excessive force. Irvine moved for partial summary judgment on his Fourth Amendment claims against Cook in his individual capacity for the unreasonable search and seizure and the use of excessive force, and the Court granted that motion. (Dkt. 25). The City then moved for summary judgment on the claims against it, and the Court granted the City's motion. (Dkt. 45). The only issue remaining for trial is to determine the amount of damages Cook's violation of Irvine's constitutional rights caused. Trial is currently set for February 24, 2025.

## II.  LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs and limits the admissibility of expert testimony in two ways. First, Rule 702 only permits witnesses with special "knowledge, skill, experience, training, or education," to testify as experts. Second, it limits a qualified expert's testimony to that which "will help the trier of fact to understand the evidence or to determine a fact

MEMORANDUM DECISION AND ORDER - 2

in issue"; is based on "sufficient facts or data"; is "the product of reliable principles and methods"; and is "reliably applied" to the facts of the case. Fed. R. Evid. 702(a)-(d).

The Ninth Circuit has summarized Rule 702's requirements as follows: "expert testimony must (1) address an issue beyond the common knowledge of the average layman, (2) be presented by a witness having sufficient expertise, and (3) assert a reasonable opinion given the state of the pertinent art or scientific knowledge." *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001) (citing *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997)). District courts have broad discretion in applying this test. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999).

The district court's role in applying Rule 702 is to be a gatekeeper. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In that role, the court considers both the relevance and reliability of the proffered evidence. *Kumho*, 526 U.S. at 141. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation omitted); *accord Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022).

Rule 702 clarifies the proponent of expert testimony must meet all of Rule 702's substantive standards for admissibility by a preponderance of evidence. As the Committee Notes to the 2023 Amendment state, "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 Comm. Note (1). Rule 702(d) emphasizes that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology. Fed. R. Evid. Comm. Note (2).

**MEMORANDUM DECISION AND ORDER - 3**

### III.  ANALYSIS

A.  **Opinion Regarding Abrasions on Irvine's Knuckles and Rib Fractures**

Irvine objects to Dr. Stromberg's opinion that the abrasions on Irvine's left knuckles are "***easily attributed to fighting with a closed fist***, but [are] inconsistent with a fall from a bicycle onto the right side." (Dkt. 39-1 at p. 6) (emphasis added). Irvine characterizes this statement as an "opinion" that he engaged in a "fist fight" with Schmidt, resulting in abrasions to his left knuckles. Irvine says this opinion is unreliable because it is not supported by "sufficient facts or data."

Rule 702(b) "permits the introduction of expert testimony only if 'the testimony is based on sufficient facts or data.'" *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019) (internal quotations marks omitted). "The expert's opinion must rest on 'facts or data in the case that the expert has been made aware of or personally observed,' not merely assumptions and speculation." *Id.* (quoting Fed. R. Evid. 703). Similarly, "[a]n expert opinion may not be based on assumptions of fact without evidentiary support." *de la Torre v. CashCall, Inc.*, 56 F. Supp. 3d 1073, 1095 (N.D. Cal. 2014) (citing *Guidroz-Brault v. Mo. Pac. R. Co.*, 254 F.3d 825, 830-31 (9th Cir.2001) (excluding expert testimony "not sufficiently founded on the facts" of the case). "When expert opinions are not supported by sufficient facts, or when the indisputable record contradicts or otherwise renders the opinions unreasonable, they cannot be relied upon." *W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*, 65 F. Supp. 2d 1052, 1060 (N.D. Cal. 1998), *aff'd*, 190 F.3d 974 (9th Cir. 1999) (citing *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993)).

The Court does not doubt Dr. Stromberg's general opinion that fist fighting can result in abraded knuckles. Regardless, what matters for purpose of admissibility is whether the evidence connects Irvine's knuckle abrasion to fist fighting in this case. If no evidence supports that Irvine

MEMORANDUM DECISION AND ORDER - 4

had been fist fighting, Dr. Stromberg's opinion about the cause of Irvine's knuckle abrasions is neither relevant nor reliable. Cook, however, presents no evidence that Irvine and Schmidt engaged in a fist fight and that Irvine had otherwise been fist fighting. Instead, the undisputed evidence indicates that Schmidt swung the bat at Irvine, who ended the physical altercation by blocking the blow with his left arm or hand. Absent evidence Irvine engaged in a fistfight, Dr. Stromberg's opinion that hitting with a closed fist could cause knuckle abrasions—even if true as a general matter—would be unhelpful to the jury at best and at worst confuse and mislead the jury. Accordingly, Dr. Stromberg's opinions that a fist fight caused the abrasions on Irvine's fists is inadmissible.

Likewise, Dr. Stromberg's opinion that the impact from a baseball bat could have caused Irvine's rib fractures is inadmissible. This opinion is not based on an adequate factual foundation. In explaining the basis for this opinion, Dr. Stromberg states he is "not satisfied that the extent of the altercation preceding the arrival of law enforcement has been elucidated." (Dkt. 39-2 at p. 13). He observes that if "the rib fractures been reported as a result of impact with a baseball bat, [he] would not be doubtful of the explanation." (*Id.*). Further, he observes "rib fractures are not common," "[g]iven the number of people that suffer falls from bicycles, or even motorcycles or horses." (*Id.*). Based on these observations, Dr. Stromberg concludes "[t]he fractures of the ribs could be a result of injuries from the impact of a baseball bat in a fight, plus or minus a fall from a bicycle." (*Id.*).

Dr. Stromberg's opinion that "the impact of a baseball bat in a fight" could have caused Irvine's injuries necessarily rests on an assumption that Irvine was indeed hit with a baseball bat. Nothing in the record, however, supports this assumption. Cook presents no evidence Irvine was hit in the ribs with a bat. To the contrary, Irvine testified that he blocked Schmidt's blow with the

**MEMORANDUM DECISION AND ORDER - 5**

bat with his left hand or arm, and that Schmidt told Officer Cook "he hit [Irvine] with the bat on the wrist or hand area" and nowhere else. (Dkt. 30-4 at p. 7). Likewise, the witness who spoke to Cook after the incident stated Schmidt hit Irvine "in the hands" with the bat. (*Id.*). Without a factual basis to support Dr. Stromberg's assumption that Irvine was hit in the ribs with a baseball bat, Dr. Stromberg's opinion that a baseball blow to the ribs could have caused Irvine's injuries is unreliable and, thus, inadmissible. *See Guidroz-Brault*, 254 F.3d at 831 (holding "the district court properly excluded the testimony of the lighting expert because it was not sufficiently fact based to be reliable on the question of the distance from which a proper lookout could have seen the sabotaged rail").

**B.      Opinion Regarding Wound Care**

Irvine also objects to Dr. Stromberg's opinion regarding Irvine's wound care treatments. Regarding these treatments, Dr. Stromberg opined they were excessive or unnecessary:

> The wound care treatment was over a period of about six months. The wound care documents indicate that the right flank abscess wound was treated up through 01/29/2021. I find two things curious. First, that a wound that measures 1/4-inch in all three dimensions is still being treated formally at a wound treatment center. At some point this formal treatment is unnecessary and I would submit that this dimension of a wound, unless an active sinus tract, can be ignored. Alternatively, the lesion can be elliptically excised and fresh edges allowed to heal primarily, which would take about two weeks.

(Dkt. 39-2 at p. 13).

Irvine argues this opinion is speculative because Dr. Stromberg "does not specify a date, timeframe, or symptoms/presentation when he believes the wound could be 'ignored' or the lesions can be excised." (Dkt. 41 at p. 3). Contrary to Irvine's argument, however, Dr. Stromberg noted the wound was last measured on October 31, 2020 (Dkt. 39-2 at p. 12), at which point he unequivocally stated that he believed it could either be ignored or excised and that any treatment

MEMORANDUM DECISION AND ORDER - 6

after that date was unnecessary. This opinion is sufficiently reliable to be admissible, and Irvine may cross-examine Dr. Stromberg on this point at trial.

C.     **Opinion Regarding Irvine's Credibility**

Further, Irvine challenges "Dr. Stromberg's testimony on Mr. Irvine's reliability or credibility, and the effects of drug use thereon, are clearly inadmissible under Rule 702." (Dkt. 39-1 at p. 11). In his supplemental report, Dr. Stromberg opines Irvine is an unreliable witness due to alleged drug abuse, stating that "the failed drug screens, missed appointments, and drug requests augment my prior opinion that Mr. Irvine is unreliable and is an abuser of illicit substances. His prior testimony may also be unreliable." (Dkt. 39-2 at p. 25).

To the extent that Dr. Stromberg opines on Irvine's credibility, such opinions are inadmissible. "An expert witness is not permitted to testify specifically to a witness' credibility . . . ." *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989). "Credibility determinations are tasks suited to a jury" and do not require expert opinion. *Rapp v. NaphCare Inc.*, No. 3:21-CV-05800-DGE, 2023 WL 5844724, at *3 (W.D. Wash. Sept. 11, 2023) (citation and internal quotation marks omitted).

Dr. Stromberg may testify, however, that the medical evidence does not support Irvine's self-reported pain scores or Irvine's self-reported limitations. Dr. Stromberg opines that Irvine's "current pain complaints should be assessed relative to historical norms." (Dkt. 39-2 at p. 14). He bases this opinion on his knowledge that individuals who use drugs may exaggerate their pain to obtain pain medication. In support, Dr. Stromberg notes, for example, that Irvine admitted during his deposition "to going to Eastern Idaho Regional for a visit to obtain pain medications . . . not because of his pain level, but because he had an addiction to narcotic pain medications." (Dkt. 39-2 at p. 14). This and other similar testimony is admissible.

**D.     Comments Regarding Missing Information**

Finally, Irvine challenges Dr. Stromberg's comments about Irvine's counsel specifically requesting that Irvine's medical records regarding his substance abuse be omitted from the records request. For example, Dr. Stromberg states that "I also find it curious that the record requests from Mr. Irvine's legal representation expressly requested elimination of information regarding substance abuse, which would seem to be quite relevant to this case." (Dkt. 39-2 at p. 25). If, however, Dr. Stromberg concluded this information was necessary to formulate his opinions, defense counsel should have requested that Irvine produce the information. That Dr. Stromberg has not reviewed such information precludes him from offering any opinions about it, including that it would have been helpful or insightful to him or that he finds the records requests curious.

## IV.  ORDER

**IT IS ORDERED that** Plaintiff's Motion in Limine to Exclude Opinions of Lynn Stromberg, M.D. (Dkt. 39) is **GRANTED in part and DENIED in part**, as set forth above.

DATED: September 03, 2024

Amanda K. Brailsford
U.S. District Court Judge